JOSEPH HABERSTRO, RESPONDENT, *v.* JOHN BEDFORD AND HENRY H. PHILLIPS, APPELLANTS.

*Undertaking to secure the discharge of a person arrested — Code of Civil Procedure, sec.* 575—*when it is not void as taken* colore officii — 2 *R. S.,* 286, *sec.* 59—*liability of sureties failing to justify—the neglect of the sheriff to avail himself of existing remedies to escape liability will not relieve the sureties unless bad faith be shown.*

This action was brought by the sheriff of Erie county against the defendants, who, after signing as sureties an undertaking to procure the discharge from arrest of one Warren, in a civil action brought against him to recover a sum of money fraudulently appropriated by him, had refused to justify after exception to their sufficiency had been taken. A judgment having been recovered in the action against Warren, and executions thereon, against his property and person, respectively, having been duly issued and returned unsatisfied, an action was brought by the plaintiff in such action against the sheriff, in which action a judgment was recovered against the sheriff, which he was compelled to pay.

The undertaking, executed by the defendants in the present action, was in the form prescribed by section 187 of the old Code, and contained a provision by which the sureties agreed "that Warren should, at all times, render himself amenable to the process of the court during the pendency of the action." The sureties claimed that as, at the time the undertaking was given, the form thereof was to be determined by section 575 of the Code of Civil Procedure, which was then in force, and as that section did not require it to contain the provision above set forth, the undertaking was void as having been taken by the sheriff "by color of his office," in violation of the provisions of section 59 of chapter 3, title 2, part 3 of the Revised Statutes.

*Held,* that the undertaking was not taken *colore officii,* and that it was valid.

That as the undertaking contained all the provisions required by the statute in force at the time it was given, and as the additional clause added nothing to the statutory obligation assumed by the sureties, that such additional clause was mere surplusage and did not vitiate the instrument. (BARKER, J., dissenting.)

That the omission to state in the body of the undertaking that the parties thereto are bound in the sum specified in the order of arrest, is not fatal to its validity, when that sum can be ascertained from the order of arrest, as such undertaking is to be read in connection with the order of arrest in determining the liability of the sureties.

The action brought against the sheriff upon the judgment recovered against Warren was commenced on April 10, 1879. On April fourteenth the plaintiff, as such sheriff, caused the return of Warren into his custody, and might have retained him in his custody and obtained exoneration from his liability as bail prior to April thirtieth, as his time to answer did not expire until that time. On April fifteenth the defendants, while Warren was thus in custody, sought to make a formal surrender of Warren to the sheriff, which would have been effectual if they then had the power to do so. On April twenty-fourth the sheriff accepted an undertaking and released Warren, rearrested him on April twenty-eighth by the coroner, and set him at liberty on the next day on receiving another undertaking. Thereafter motions made by the sheriff for an order exonerating him as bail were denied.

*Held*, that after the sheriff became liable as bail, the defendants ceased to have any rights or privileges as such, and that their liability became his indemnity for the damages he might legitimately sustain in consequence of the relation of bail being imposed upon him.

That the fact that the sheriff was misguided, or was illy advised of his legal rights, and therefore failed to observe and resort to the remedies which may have been available to relieve him from liability as bail, did not constitute a defense for the defendants, without evidence of bad faith on his part towards them, which was not shown in this case.

APPEAL from a judgment in favor of the plaintiff entered on a verdict in the Superior Court of Buffalo, and from an order denying a motion for a new trial. The case was transferred to this court for review, pursuant to the Code of Civil Procedure (§ 273).

The defendants became bail for one Warren, upon his arrest in a civil action, and the plaintiff therein having excepted to such bail, and the defendants having failed to justify the plaintiff, in· the present action as sheriff of Erie county, who made the arrest, was charged as bail. He was sued as such and a recovery was had against him, which he paid; thereupon he commenced this action against the defendants as bail, to recover the damages which he had sustained, pursuant to section 589 of the Code of Civil Procedure, and a verdict was rendered in the plaintiff's favor for the sum of $4,778.22.

*Truman C. White*, for the appellants.

*Adelbert Moot*, for the respondent.

BRADLEY, J.:

The question is presented whether the undertaking taken by the plaintiff, as sheriff, in the action of *Douglas* v. *Warren* was *colore officii*, and void within the statute which provides that "no sheriff or other officer shall take any bond, obligation or security, by colour of his office, in any other case or manner than such as are provided by law, and any such bond, obligation or security taken otherwise than as herein directed shall be void." (2 R. S., 286, § 59.) This undertaking was in the form prescribed by section 187 of the old Code, but was made after the Code of Civil Procedure went into effect, by which the terms of the undertaking, required in a case like that in which this one was taken, was so changed as to omit the provision that the arrested defendant should "at all times render himself amenable to the process of the court during the pendency of the action" in which the order of arrest issued. (Sec. 575, sub. 3.) Those words were not properly embraced in the undertaking in question and if, in any view which can legitimately be taken of those words in such a case, they in terms impose any burthen upon the person arrested, for the protection of his sureties, not within the authorized provisions of the instrument, it was wholly void; and can furnish no support for the relief of the plaintiff in this action. (*Cook* v. *Freudenthal*, 80 N. Y., 202; *Toles* v. *Adee*, 84 id., 222.) This undertaking contains the terms provided by the statute for it, and in such case if the additional words employed may be treated as surplusage merely, the instrument will not be void, and that depends upon the question whether any use, if valid, could be made of the extra provision in any event as against the principal named in it, or to charge his sureties to any extent otherwise than the omission of such provision would permit. The provision that the principal would "at all times render himself amenable" to the process of the court, as directed by the old Code, was what was required, as equitable bail, of a party taken in custody on writ of *ne exeat*. The legal and practical effect of this was, that the arrested defendant would render himself amendable to process to enforce performance of any decree that might be rendered against him.

(*Gleason* v. *Bisby*, Clarke, 557; *Dunham* v. *Jackson*, 1 Paige, 629, *Mitchell* v. *Bunch*, 2 id., 606; *McNamara* v. *Dwyer*, 7 id., 239) It is difficult to see in this extra phrase any legitimate import, as applied to the action at law in which the undertaking was made, not embraced within the provisions required by the statute. (Code Civil Pro., § 575, sub. 3.) It was evidently inserted in the old Code in view of the purpose of the commissioners to abolish the writ of *ne exeat*, and in their expectation and belief that such would be the effect of the legislative adoption of their work, and that they therefore designed to make the provisions for arrest and bail applicable to actions for both legal and equitable relief. The weight of authority upon the conflict of decisions is that the writ was not abolished by that Code, and it may in that view be said that the particular provision in question, in its purpose and effect, was nugatory. It is not apparent, nor am I able to see, that the use of these unauthorized words of the undertaking can have any possible import in an action at law, other than such as would be furnished by their exclusion from the instrument. No requirement within the provisions of the undertaking, other than that arising out of the liability established by the judgment, seems to have been possible in the action in which it was taken. That was an action for the recovery of money only, and the order of arrest was supported by the charge of fraudulent appropriation of money by Warren, the defendant therein. The provision of the undertaking, that he would render himself amenable to such process as might be issued to enforce the judgment, was all that was applicable in that action, or which to any extent characterized the nature of the obligation assumed by the instrument executed by the sureties.

It would have been otherwise if it had contained the provision usually inserted in bonds on discharge from arrest on *ne exeat*, that the defendant would "not depart from or leave this State, without the permission of the court," but nothing in this undertaking imports any such obligation. It has been suggested that the failure of the defendant to obey a subpœna to appear as a witness in the action, might result in a breach of the terms of the undertaking, but the expression used in it has been one of practical use and construction in proceedings in courts of equity, and it has not been deemed applicable to any such use or effectual for any such

purpose. It relates only to the process of the court to enforce some decree or judgment in the action, and not to any proceeding taken to compel the attendance of the defendant as a witness in it for the plaintiff.

The statute rendering void unauthorizeᴏ securities taken by public officers is applied with much strictness. And in *Barnard* v. *Viele* (21 Wend., 88), NELSON, Ch. J., remarked that a bond was void, although the legal effect of that there in question, and that authorized, seemed to be substantially the same ; but it will be observed that there the bond differed in its terms from that prescribed by law, while here the required terms are adopted, and the only question arises upon the effect of the additional provision inserted in the undertaking. It seems to add nothing to the statutory obligation assumed, and is therefore mere surplusage, and does not vitiate the legal quality of the instrument. The contention to the like effect in *Cook* v. *Freudenthal* (*supra*), was overcome by the fact that there was a possible contingency in an action of the character of that one, that an execution might issue against the body of the defendant upon the judgment, hence the unauthorized provision of the undertaking rendered it void, but there was no suggestion by the court in that case that its provision to the effect that the defendant would be amenable to the process of the court, added anything in terms to its effect, other than its relation to the enforcement of the judgment of the court. My conclusion is that the undertaking in qu tion was not taken *colore officii,* and that it was valid.

The proceedings which preceded and led to this action, so far as material, are that Alice Douglas brought an action against William T. Warren, in which an order of arrest was issued, and Warren was arrested by the plaintiff, then sheriff of Erie county, and the defendants made the undertaking before mentioned, which was received by the plaintiff, and Warren was discharged. This bail was excepted to, and they failed to justify. A judgment was recovered against Warren in that action. And an execution against his property having been returned unsatisfied, and one against his person returned not found, an action was brought by Douglas against this plaintiff, in which a recovery was had and sustained after a long litigation which is somewhat represented by

the report of it in 25 Hun, 262; reversed 88, N. Y., 611; 30 Hun, 649; affirmed 96 N. Y., 626. The liability of the plaintiff was as bail, which relation he assumed when the sureties in the undertaking failed to justify (Code Civil Pro. 587), and they became liable to him for all the damages he should sustain by reason of such omission. (Id., § 589.) The purpose of this action is to recover such damages.

It is contended on the part of the defense that the liability of the plaintiff as bail was occasioned by his own fault or neglect to protect himself, which his duty to the defendants required him to do in their behalf, and that for his failure to do so they were relieved from liability to him. It appears that the reason why Warren was not found and taken on the execution issued against his person, was because he had been taken to the Inebriate Asylum, at Binghamton, by virtue of an order to that effect made by the county judge of Erie county. That order seems to have been void, and was so treated by the trial court. The action against the plaintiff was commenced April 10, 1879, and on the fourteenth of that month the plaintiff, as such sheriff, caused the return of Warren into his custody, and might have retained him in his custody and exoneration have been obtained by the sheriff, as such bail, prior to April 30, 1879, as his time to answer the complaint did not until then expire. (Id., §§ 591–595.) On the fifteenth April, and while Warren was in such custody, the defendants sought to make a formal surrender of him to the sheriff, and if it was in their power to do so it would have been an effectual relief for them, but their relation as bail, by reason of their failure to justify, had terminated and did not exist at the time of such attempted surrender, and it was, therefore, ineffectual as such. (*Clapp* v. *Schutt*, 44 N. Y., 104.) The plaintiff did not continue the retention of Warren in his custody, but on the twenty-fourth of April he accepted an undertaking in behalf of the judgment debtor and discharged him, caused his rearrest on the twenty-eighth of the month by the coroner, and on the next day he was again set at liberty on giving, with sureties, another undertaking, both of which were in the form of that first before mentioned. This arrest was evidently caused with a view to the exoneration of the sheriff as bail, and an application was by him made to the court, and the order granting it was reversed. (*Douglass* v. *Warren* and *Same* v. *Haberstro*, 19 Hun, 1.) And after the

plaintiff's term of office expired, and in February, 1880, he surrendered Warren to the sheriff, by whom he was taken into custody, and again moved for his exoneration as bail, and the order then granting his application was also reversed. (*Douglass v. Haberstro,* 21 Hun, 320; 82 N. Y., 572.) The opportunity of the plaintiff to obtain, as matter of right, his exoneration as bail, was lost by the discharge of Warren from custody after he was placed there in April, 1879. The taking of the undertakings thereafter received was without authority of law, and the discharge of the judgment debtor thereupon permitted, is treated as an escape, and of this the defendants complain, and allege such release from custody as matter of defense. It cannot well be claimed that the failure of the plaintiff to keep the judgment debtor in custody was caused by any bad faith on the part of the plaintiff, or with any view to charge the defendants with liability. They denied to themselves the rights and privileges of bail when they refused or neglected to justify. The plaintiff owed to them good faith, but no active duty to protect them against the consequences of such omission on their part. It is not, therefore, a defense for them that he may, by a different course of proceeding than that taken by him, have protected himself and them against liability. When the defendants made the undertaking and he accepted it, the judgment debtor was entitled to his discharge from custody. (Code Civil Pro., § 573; *Arteaga* v. *Conner,* 88 N. Y., 403.) And it was only after he, by force of the statute, became bail that the sheriff was permitted to surrender or take him into custody. At the time he became such, the defendants ceased to have any rights or privileges as bail, and their liability became his indemnity for the damages that he might legitimately sustain as the consequence of the relation imposed upon him. The fact that the plaintiff misjudged or was illy advised of his legal rights, and therefore failed to observe and resort to the remedies which may have been available to relieve him from liability as bail, does not constitute a defense for the defendants without the support of bad faith on his part towards them, which does not appear to be a feature in the case. As the case is now viewed. the plaintiff was entitled to recover.

The amount of damages was a question of some controversy upon the evidence and in the contention of the parties. None of

the exceptions having relation to the measure and amount of the damages, or raising any other question on the trial, seem to have been well taken.

The judgment and order should be affirmed.

SMITH, P. J., concurred; HAIGHT, J., not sitting.

BARKER, J. (dissenting).

The plaintiff, as sheriff, arrested one Warren by virtue of an order of arrest in a civil action wherein one Douglass was the plaintiff, by which he was commanded to hold him to bail in the sum of $1,200. Warren, immediately upon his arrest, presented to the sheriff a bail bond, executed by himself and the defendants as his sureties, wherein they jointly and severally agreed " that Warren should at all times render himself amenable to the process of the court during the pendency of the action and to such as might be issued to enforce the judgment therein." The sheriff thereupon discharged Warren from custody. The plaintiff in the action excepted to the sufficiency of the sureties, and they failed to justify. Thereafter the plaintiff in that action recovered a judgment against Warren in the sum of $1,243, upon which a body execution was issued to the plaintiff, as sheriff, who returned the same not found. The sureties having failed to justify, the sheriff became liable to the plaintiff as bail. (Code of Civil Pro., § 587; *Arteaga* v. *Conner,* 88 N. Y., 403; *Clapp* v. *Schutt,* 44 N. Y., 104.)

Upon the return of the body execution an action was commenced by Douglas against the sheriff, as bail, in which he appeared and answered, the trial of which resulted in a verdict against the sheriff, upon which judgment was entered for $2,005.38 damages and $104 costs, which the sheriff paid before the commencement of this action. During the pendency of the action against the sheriff, and after the time to answer had expired, the sheriff moved the court for an exoneration as bail, on surrendering Warren into custody. This application was denied. (*Douglas* v. *Haberstro,* 21 Hun, 320; S. C., 82 N. Y., 572.)

The bail taken upon the arrest, unless they justify, or other bail are given and justify, become liable to the sheriff for all damages which he may sustain as bail. (Sec. 589.) The nature and extent of the sureties' liability over to the sheriff in such a case is clearly

defined by provisions of the statute, and is measured by the extent of the latter's liability to the plaintiff in the action. At the time the action was commenced by Douglas against the sheriff, as bail, his liability was fixed. An execution against the property of Warren having been returned unsatisfied, and the sheriff being unable to make an arrest upon the body execution, the extent of his liability as bail was the amount of the judgment recovered against Warren. That liability the sheriff has discharged in full by paying the judgment against himself.

The plaintiff made out a *prima facie* case, which entitled him to a verdict, on producing the record of the proceedings in the suit against himself, if the undertaking executed by Warren and the defendants as his sureties was in due form as required by the statute. On the trial the defendants interposed the objection, as against their liability to the sheriff, that the undertaking executed by Warren and themselves was not in conformity to the provisions of section 575, and is made void by the provisions of section 59, chapter 3, title 2, part 3 of the Revised Statute, which declares that "no sheriff or other officer shall take any bond, obligation or security, by colour of his office, in any other case or manner than such as are provided by law; and any such bond, obligation or security taken otherwise than as herein directed shall be void." Section 575, subdivision 3, of the Code provides, that the defendant, on being arrested, may give bail by delivering to the sheriff a written undertaking, in the sum specified in the order of arrest, and where the arrest is made for a cause such as that upon which Warren was arrested, the undertaking shall be, " that the defendant will at all times render himself amenable to any mandate which may be issued to enforce a final judgment against him in the action." Section 561 requires that the order directing the arrest shall state a specified sum within which the defendant is to be held to bail.

The defects of the undertaking which the respondents claim makes the same void as declared by the statute are : First, That the bond does not state a sum in which the defendant should be held to bail. Second : That it contains an unauthorized provision, that the defendant should at all times render himself amenable to the process of the court during the pendency of the action. The omission to state in the body of the undertaking that the parties thereto

were bound in the sum specified in the order of arrest is not in our opinion fatal to its validity, on the ground that it is an incomplete instrument. In determining its validity so far as this objection is concerned we think the order of arrest may be read in connection with the undertaking and the sureties liability in an action against them would be limited to the sum mentioned therein. In the recitals of the undertaking it is stated that the order of arrest required the sheriff to hold Warren to bail in the sum of $1,200. The argument of the appellant's counsel, that without inserting in the undertaking the sum mentioned in the order of arrest, so as to limit the obligors liability to that sum, they would be liable by the terms of the undertaking to the whole amount of the judgment, if it should exceed the sum mentioned in the order of arrest. We think the position is unsound and that such a construction cannot be reasonably placed upon that instrument. Section 187 of the old Code, which relates to the form of the undertaking, did not require that the same should be in a specified sum, and the provision was inserted in section 575 of the present Code so as to remove all doubt as to the extent of the sureties' liability in an action upon their undertaking.

It has never been held in an action against the sureties upon an undertaking, where a specified sum was not named, that the sureties were liable for the whole amount of the judgment if the same should exceed the amount mentioned in the order of arrest. If the sureties, by the terms of their undertaking, became obligated to pay the judgment which should be rendered in the action although it should exceed the sum of $1,200, the sum mentioned in the order of arrest, then, in our opinion, it would be void under the statute, as unauthorized by law and exacted by the sheriff by color of his office. (*Toles* v. *Adee*, 84 N. Y., 222.)

The second objection presents a more serious question. The undertaking was executed January 7, 1879. At that time section 575 of the present Code was in operation as a substitute for section 187 of the old Code, and the provision of the undertaking that Warren should be amenable to the process of the court during a pendency of the action was unauthorized. Section 187 of the Code of Procedure did contain a requirement that the bail bond should contain a provision of the nature and effect of the one found in the undertaking now under consideration. An undertaking,

with a similar provision, may be demanded of the defendant, under the present Code, as a condition of his discharge from arrest, but not where the cause of the arrest was such as the one upon which Warren's arrest was founded. The order of arrest was granted by a judge at chambers and required that Warren be held to bail in the sum of $1,200. He was entitled to a discharge from custody on complying with subdivision 3, section 575, which requires that an undertaking be executed by himself and two sureties, conditioned that he would at all times render himself amenable to any mandate which might issue to enforce a final judgment against him.

By section 548 the writ of *ne exeat* was abolished. Under the provisions of subdivision 4 of section 550 an order of arrest may be granted in a class of cases where, under the old chancery practice, a writ of *ne exeat* might issue. But an order of arrest in that class of cases can only be issued on special application to the court. (Sec. 551.) When the order of arrest must be granted by the court an undertaking may be dispensed with altogether, or, if one is required, its conditions may be prescribed by the court. (Sec. 560.) And if no directions are set forth in the order of the court directing arrest, then the defendant may be discharged from custody on complying with subdivision 1 of section 575. The condition of amenability to the process of the court during the pendency of the action, inserted in this undertaking, is the same, in substance, as was usually required on granting a writ of *ne exeat* under the old practice, and the same as is now generally demanded in like cases, under the provisions of the present Code. (1 Barb. Ch. Prac., 654.)

The provision of the undertaking executed by the defendants, as sureties for Warren that he would "at all times render himself amenable to the process of the court during the pendency of the action," was wholly unauthorized. It was an onerous condition, and if strictly observed by Warren would have required him to remain, at all times pending the action, within the jurisdiction of the court. The object of the statute, in providing the terms and conditions upon which a party under arrest shall be entitled to his discharge, was to prevent the exaction of unreasonable or oppressive bail, and to leave nothing to the discretion of the officer executing the process. The sum mentioned in the order of arrest limits the power of the officer, and if he exacts a greater sum to be inserted in

the bond, or any other condition not authorized by law, the instrument comes within the condemnation of the statute and is void. In giving a construction to this statute the courts have been uniform in holding sheriffs and other officers, who are authorized to take bail from parties in their custody, to a strict compliance with the statute authorizing the giving of bail by parties under arrest. (*Shaw* v. *Tobias*, 3 Comst., 188; *Winter* v. *Kinney*, 1 id., 367; *Barnard* v. *Viele*, 21 Wend., 88; *Webber* v. *Blunt*, 19 id., 188; *Acker* v. *Burrall*, 21 id., 607; *Decker* v. *Judson*, 16 N. Y., 439.)

The more recent decisions on the subject are directly in point and may be followed in disposing of this case, as the facts in the cases referred to are not materially different. In *Cook* v. *Freudenthal* (80 N. Y., 202), where the action was replevin, an order of arrest was granted, and, by the provisions of the statute then in force the defendant was entitled to his discharge from custody on giving an undertaking with two sureties, to the effect " that they are bound in double the value of the property as stated in the affidavit of the plaintiffs for the delivery thereof to the plaintiffs, if such delivery be adjudged, and for the payment to them of such sum as may for any cause be recovered against the defendant." (Code, § 187–211.) The defendants, as his sureties, executed an undertaking, which, among other things, contained a provision that he would, at all times, render himself amenable to the process of the court during the pendency of the action. It was held that the undertaking was void as having been taken *colore officii*, for the reason that it bound the sureties for the amenability of the defendant to process in the action during its pendency, an obligation unauthorized by the statute under which the undertaking was given, and which could not be required from the defendant as a condition of his release from imprisonment, and that the insertion of the unauthorized condition of the bond brought the case within the provisions of the statute declaring void unauthorized bonds.

The unauthorized provision cannot be rejected as surplusage, upon the ground that in no event could Warren have been subjected to any process of the court during the pendency of the action, and consequently no liability could arise under this clause of the undertaking. Warren was a competent witness for the plaintiff in that suit, and she might have subpœnaed him as a witness to

testify in her behalf, and if he had failed to attend and had gone beyond the jurisdiction of the court, then the sureties would have been liable in an action by the terms of the undertaking. It was not, therefore, an undertaking by the sureties for a liability on their part on the occurrence of an impossible contingency.

In *Toles* v. *Adee* (84 N. Y., 222), the order of arrest required the sheriff to arrest the defendant and to hold him to bail in the sum of $1,000. The sheriff received an undertaking from the defendant in the sum of $2,000, and discharged him from arrest. The court, in its opinion, held that the bond was void as being unauthorized by the statute, and referred to the case of *Cook* v. *Freudenthal* with approval, and also remarked: The fact that under our practice the bail taken by the sheriff on discharging a prisoner from arrest stands in some sense both as bail to the action and bail for the sheriff, does not, we think, at all affect the application of the statute making void obligations taken *colore officii*, when the undertaking contains conditions not prescribed by law; nor is it, as we conceive, in the power of the plaintiff afterward to adopt the act of the sheriff and thereby avoid the effect of the illegality. Such a principle, if admitted, would defeat the purpose of the statute. * * * Courts justly regard with great jealousy all departure by officers holding prisoners under arrest from the strict line of duty. The undertaking in this case bound the surety in double the sum authorized by the order of arrest, and if the undertaking was to be regarded as taken by the sheriff in his official character, and in the exercise of his official authority, it must, both upon principle and authority, be held to be void. But the court, in its final disposition of the case held that in view of the other facts disclosed by the case that it was in effect a special agreement between the parties themselves, and not an undertaking exacted by the sheriff in his official capacity as a condition of the defendant's release, and for that reason the same was valid.

The condition of amenability to the process of the court during the pendency of the action is positive and unqualified, onorous in its character and is a provision additional to those required by the statute and we think is condemned as void by the letter and the spirit of the statute prohibiting officers from taking a bond in any other case or manner than such as are provided by law. (*The*

*People* v. *Meighan,* 1 Hill, 298.) By the common law an agreement good in part and void in part might be enforced as to the parts which were good and valid, but this statute condemns the whole instrument and changes the common law rule on the subject. If the statute had failed to so declare, it would not have accomplished the purpose intended

If we are correct in the views expressed as to the invalidity of the undertaking the error is fundamental and is at the base of the plaintiff's alleged cause of action and prevents a recovery in any event. It is therefore unnecessary to consider the other points presented by the appellants.

If it be true, as the evidence tended to show, that the defendants requested the sheriff to defend the suit brought against him as bail, and that they would' pay the cost of such defense in case of a recovery against him, it does not estop them from asserting that they never became liable under the statute for the reason that the bail bond signed by them was void. If the defendants never incurred any legal liability by reason of the execution of the undertaking, then it would seem to follow, as a legal conclusion, that their promise to pay the costs in the action against the sheriff was without consideration and invalid for that reason.

The judgment and the order should be reversed and a new trial granted and the proceedings remitted to the Superior Court of the city of Buffalo.

Judgment and order affirmed.